Patrick Q. Hall, Ca. Bar No. 97019
Lauren M. Hofflin, Ca. Bar No. 310005
Law Offices of Patrick Q. Hall
501 W. Broadway, Suite 730
San Diego, California 92101
Telephone: (619) 268-4040
Fax: (619) 268-4041
pat@pqhlaw.com

Attorneys for Defendant
DANIEL ANTHONY FISCHBECK

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(Hon. Larry Alan Burns)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL ANTHONY FISCHBECK, (1)<br><br>Defendant. | CASE NO. 20-CR-0479-LAB-1<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DISCOVERY** |

## I.
## INTRODUCTORY STATEMENT

Mr. DANIEL ANTHONY FISCHBECK is charged in a two-count information with two firearm possession charges.  In Count One, he is charged with possession of a firearm while subject to a specified restraining order in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2).  In Count Two, he is charged with being an unlawful user or addict to controlled substances in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

The gist of the indictment is that Mr. FISCHBECK while subject to a court order issued by the Superior Court of California on October 10, 2019, Case Number 37-2019-00044276-CU-PT-CTL, restraining him from harassing, stalking or threatening M.E.J., possessed a firearm.  He was arrested two times by state law enforcement with allegedly violating that restraining order.  His last arrest was on January 1, 2020, and at the time of his arrest, a firearm was found in the trunk of the vehicle his girlfriend was driving, along with hypodermic syringes.

By this motion, Mr. FISCHBECK seeks access to the physical evidence seized during the search of the vehicle, as well as impeachment information relating to any Government witness, witness statements somehow attributed to Mr. FISCHBECK. Finally, he seeks access to any documentary evidence seized during the course of the Government investigation in this case.  Mr. FISCHBECK also seeks additional discovery in order to prepare for trial.

**ITEM ONE: WITNESS LIST**

Mr. FISCHBECK requests a list of witnesses in the instant case including witnesses who the Government intends to call in its case-in-chief at trial, and a list of percipient witnesses to the events in the indictment, who the Government does not intend to introduce at trial.   Mr. FISCHBECK specifically notes that this Court has absolute discretion to order a witness list.  It should be emphasized that a witness list is not covered by the Jencks Act.  In *United States v. W.R. Grace & Co.*, 526 F.3d 499 (9th Cir.2008) (en banc) the Ninth Circuit held that a court's supervisory powers extended to the authority to issue a pre-trial enforcement order to divulge a witness list.  *Id.* at 513.

See also *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984); *United States v. Higgs*, 715 F.2d 39 (3d Cir. 1983); *United States v. Fischel*, 686 F.2d 1092, 1090-91 (5th Cir. 1982); *United States v. Rosales*, 680 F.2d 1304, 1305 (10th Cir. 1981); *United States v. Colson*, 662 F.2d 1389, 1391-92 (11th Cir. 1981); *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir. 1980); *United States v. John Bernard Industries*, 589 F.2d 1353, 1357 (8th Cir. 1979); *United States v. Harris*, 542 F.2d 1283, 1291 (7th Cir. 1976); *United*

*States v. Cannone*, 528 F.2d 296, 298-300 (2d Cir. 1975); and *United States v. Richter*, 488 F.2d 170, 173-74 (9th Cir. 1983).

Mr. FISCHBECK respectfully submits that for substantial reasons, the sound exercise of discretion mandates disclosure of a witness list at this juncture.  First, for the reasoning utilized by the Court in *Cadet*, it is apparent that witnesses, who the government does not intend to call at trial, may very well be witnesses exonerating the defendant.  For example, there may be persons present on various dates, when Mr. FISCHBECK is charged with violating the restraining order, who the Government does not intend to call at trial.  Therefore, there is the potential that these witnesses could exonerate the defendant and therefore he seeks their names under *Brady v. Maryland*.  Access to the names of witnesses is particularly critical to assist Mr. FISCHBECK in defending against the charges in the indictment.  In such circumstances, given the Court's broad discretion in this regard, Mr. FISCHBECK requests an order for a witness list in advance of trial.

## ITEM TWO: EXPERT WITNESSES AND REPORTS

Federal Rule of Criminal Procedure 16(a)(1)(D) provides for the discovery of reports of examinations and scientific tests as well as the discovery of information regarding government expert witnesses.  Pursuant to these rules, Mr. FISCHBECK is requesting all such materials regarding expert testimony.  The defense is entitled to any reports and a written summary of any such proposed testimony.

## ITEM THREE: DEFENDANT'S PRIOR BAD ACTS

Federal Rule of Criminal Procedure 12(d), entitled "Notice by the Government of Intention to Use Evidence," provides discovery and notice of the Government's intention to introduce evidence.  The purpose of Rule 12(d) is to avoid needless motions by defense counsel to suppress evidence that the Government does not intend to use at trial.  By providing notice of what evidence the Government intends to use, the rule seeks to "eliminate from the trial, dispute over police conduct not immediately relevant to the question of guilt." *Jones v. United States*, 362 U.S. 257, 264 (1960).

Moreover, Rule 404 of the Federal Rules of Evidence provides for reasonable notice in advance of trial of the general nature of any bad act evidence it intends to introduce at trial.  The Government must provide notice of potential evidence, which could be used at trial, particularly, the prior alleged bad acts of Mr. FISCHBECK, which might be used as evidence in the case-in-chief or as rebuttal evidence.  As noted in the Advisory Committee Rules notes, the trial courts are to be encouraged to allow the pre-trial consideration of evidentiary issues.  In order to adequately assess the nature of the instant trial, discovery of all prior bad acts in the possession of the Government regarding Mr. FISCHBECK should be ordered in advance of trial.

## ITEMS FOUR AND FIVE: STATEMENTS OF DEFENDANT

Federal Rule of Criminal Procedure 16(a)(1)(A) provides for the production of specified categories of a defendant's prior statements.  By the very terms of the rule itself, a defendant has the absolute right to inspect and copy written or recorded statements made by him to "government agents."   The term, "Government Agents" would include employees and agents of any federal agency, as well as those acting in concert with them, particularly local law enforcement agents or other assisting agencies.  This Rule has been interpreted to mandate discovery of the written summary of a defendant's oral statements contained in the handwritten notes of a government agent.  *United States v. Johnson*, 525 F.2d 999 (2d Cir. 1976); *United States v. Lewis*, 511 F.2d 798 (D.C. Cir. 1975); *United States v. Pilnich*, 267 F.Supp. 791 (S.D.N.Y. 1967), *Loux v. United States*, 389 F.2d 911 (9th Cir. 1968).

In *Saunders v. United States*, 316 F.2d 346 (D.C. Cir. 1963), the court held that even if the statement of the defendant is summarized in the notes of the United States Attorney, it is still discoverable under Rule 16 and not shielded by the "Work Product Rule."

In this case, Mr. FISCHBECK seeks any and all oral statements including those in his pre-arrest and post-arrest statements made to law enforcement officials, government agents and other witnesses, which the Government may seek to introduce at trial.

Additionally, he seeks any statements made by him to any potential informants for the Government, and which the Government may seek to attribute to him.  Mr. FISCHBECK also seeks any statements contained within any digitally recorded phone calls intercepted while he has been incarcerated at MCC.

## ITEMS SIX THROUGH SIXTEEN: IMPEACHMENT MATERIALS

Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of the crucial prosecution witness.  *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Higgs*, 713 F.2d 39, 42 (3rd Cir. 1983).

Evidence impeaching the testimony of a Government witness is exculpatory when the credibility of the witness may be determinative of a criminal defendant's guilt or innocence.  *Giglio v. United States*, *supra*, at page 154; *United States v. Gengler*, 574 F.2d 730, 735 (3d Cir. 1978).

See also *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980); *Martin v. Wainwright*, 621 F.2d 184 (5th Cir. 1980); *United States v. Starusko*, 729 F.2d 256 (3d Cir. 1984); *United States v. Higgs*, 713 F.2d 39 (3d Cir. 1983); *United States v. Gengler*, 574 F.2d 730 (3d Cir. 1978); *United States v. Kaplan*, 554 F.2d 577 (3d Cir. 1977); *Government of Virgin Islands v. Ruiz*, 495 F.2d 1175 (3d Cir. 1974).

In *United States v. Shaffer*, 789 F.2d 682 (9th Cir. 1986), defendant moved for a new trial based upon grounds of newly discovered evidence which was not disclosed by the Government and which could have impeached critical government witnesses.  The United States District Court for the Central District of California granted the new trial motion, which was upheld by the Ninth Circuit.  In *Shaffer*, the defendant was charged with numerous narcotics violations and income tax violations.  The principal witness against the defendant at trial was Mr. Robert Durand, an unindicted co-conspirator.  In exchange for immunity from prosecution, Durand agreed to cooperate with the Government on an investigation.  Before trial, Shaffer specifically made a request for information which could be used to impeach Durand.  Approximately two years after

conviction, Shaffer filed a motion for new trial based upon newly discovered evidence. Shaffer contended that the Government failed to disclose during part of the trial that Robert Durand was a paid informant in a co-defendant's separate heroin operation during certain relevant years.  Utilizing the standard set for in *United States v. Bagley*, 473 U.S. 667 (1985), the Ninth Circuit concluded that the information withheld from Shaffer regarding Durand was material and should have been disclosed by the Government. Therein, the court noted that Durand's testimony implicating the defendant was critical to his conviction and therefore the jury's assessment of the witness' credibility was crucial to the outcome of the trial.  Specifically, the court recognized that Durand's involvement in another separate heroin investigation contradicted his prior testimony that he had never participated in heroin transactions.  Thus, this information was directly relevant for purposes of impeachment and should have been disclosed.

Moreover, to the extent that the witness also received compensation in connection with these other investigations, that fact suggested to the Ninth Circuit that the issue of monetary compensation is intertwined in the description of other investigations.  The Government should be required to disclose any monetary payments and benefits, even if not provided in connection with cooperation in this case.

Identification and disclosure of other investigations in which an informant has participated was also recognized as discoverable implicitly in *United States v. Pflaumer*, 774 F.2d 1224 (3d Cir. 1985).  There, the Court, although finding the Government's failure to disclose did not undermine the confidence in the verdict, nonetheless reiterated the prosecutor's duty with respect to impeachment materials of the witness.  The court emphasized that immunity agreements with respect to testimony given as to other possible related cases was material for purposes of impeachment and that the prosecutor's failure to disclose such immunity agreements may lead to subversion of the defendant's Due Process rights.  The court further stressed that nondisclosure is incompatible with the Government's obligation to see that, so far as possible, truth emerges.

Additionally, in *United States v. Kohring*, 637 F.3d 895, 909 (9th Cir. 2011), the court held that evidence of a witness' bad memory and inconsistent statements about the defendant's motivation for taking actions must be disclosed to the defense.

The government is required to turn over evidence in its possession favorable on the issue of guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963).  In *Giglio v. United States*, 405 U.S. 150 (1972) the Court held that impeaching evidence which tended to show that an important government witness was not credible was material and properly classified as *Brady* material.  The government's failure to produce this was held to be a violation of *Brady* and of the Due Process Clause of the Fifth Amendment.  In *United States v. Cadet*, 727 F.2d 1454 (9th Cir. 1984), the Ninth Circuit Court of Appeals has held that such material may be contained within the personnel files of a government witness, such as a police officer.  Such material could include previous acts of misconduct, dishonesty, or facts constituting proof of bias, and constitutes *Giglio* material.

In *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991) the Ninth Circuit held that upon request, the prosecutor has an obligation to review federal law enforcement agents' personnel files for a determination as to whether possible *Brady* material exists, and turn over such material if it does exist.  In the event of the prosecution's discovery of questionable material the files should be submitted to the Court for an in camera review. In this case, the defendant respectfully requests that the Court order the government to review the personnel files of any official government witness that will be testifying at trial on behalf of the government.  Pursuant to *Henthorn*, the defendant respectfully requests that the Court order the government to undertake the review of the personnel files for these witnesses for *Brady* and *Giglio* material, and to seek evidence of acts of dishonesty or false statements, evidence of mental or emotional disorder or instability, previous failures to be honest and candid in court testimony, previous acts of dishonesty of any kind, evidence of bias, prejudice, interest, or corruption, or any evidence of a physical or mental infirmity or lack of capacity, for instance to observe, see or hear because of physical or health problems.

Identification of the prior occasions on which a witness may have testified is critical for trial.  First, it should be emphasized that Jencks requires the Government to turn over all statements in the possession of the Government after the witness has testified on direct examination.  To conduct effective cross-examination of witnesses, descriptions of the prior occasions on which these witnesses have testified is directly material to the issue of their credibility.  Second, their prior testimony, although perhaps not transcribed, may be completely inconsistent with their present testimony.  Thus, identification of the time will enable defense counsel to eventually obtain transcripts without needlessly delaying the trial for the preparation of transcripts and the review of these transcripts.

Identification of prior occasions on which the witnesses have testified would support the defense contention that the Government witnesses will do anything and say anything to frame a specified government target.  This was directly the theory relied upon for the reversal in *Davis v. Heyd*, 479 F.2d 446 (5th Cir. 1973).

In *Johnson v. Brewer*, 521 F.2d 556 (9th Cir. 1975), the defendant sought to introduce at trial evidence to prove that the prosecution witness had lied and attempted to frame another individual in a separate drug trial in Michigan.  Without identification of the prior Michigan testimony, the defendant certainly could not have raised this defense effectively.  In granting habeas corpus relief, the Court noted that the career status of an informant depends on his continuing relationship with the state authorities.  Thus, the possibility of the bias of a witness, in particular the modus operandi of the witness, was relevant by virtue of his prior testimony.

Mr. FISCHBECK is also seeking internal governmental memoranda regarding cooperation by any potential witness.  In *United States v. Shaffer*, *infra*, the defendant sought exactly this item of discovery.  In reversing the conviction, the court noted that numerous bits of favorable information would have been contained within these internal government memoranda if they had been produced.  Particularly, the use of Government forms to pay expenses, which related to motivation for cooperation are relevant to impeachment.  Also, the witness' cooperation in the other heroin transaction would have

been contained in this memorandum.  Finally, contained within this type of memorandum would have been information regarding the status of the witness' possible tax liability.  In *Shaffer*, the defendant recognized that benefits consisting of immunity agreements with respect to civil tax liability, was another factor which may have influenced and biased the witness against the defendant.

Witness statements contained within agent reports may also contain exculpatory information, as requested in Item One.  In *United States v. Brumel-Alvarez*, 991 F.2d 1462 (9th Cir. 1993), the Ninth Circuit reversed all of defendants' convictions for failure to turn over an internal memorandum prepared by a DEA Special Agent.  The memorandum questioned the integrity and credibility of the Government's principal witness.  For example, the witness had previously stated that he had bribed DEA agents, but later recanted these statements in the memo.  The memorandum was also highly critical of other Customs agents, expressed the agent's disbelief and distrust of the informant, and contained reflections of how the informant had thwarted an attempt to tape a telephone conversation with one of the alleged co-conspirators.  The Government did not disclose this memorandum at trial.  The prosecution argued that the statements were not Jencks Act materials "since they were not witness statements that related to the subject matters of Agent Levine's direct testimony."  The Ninth Circuit rejected this contention, noting that not only did the Government violate the Jencks Act, but that it also violated *Brady* by failing to disclose favorable evidence which could have been used to impeach the Government witness:

> The prosecution is obligated to disclose to the defense statements falling within the Jencks Act regardless of anyone's perception of the utility of the statements for impeachment.

*United States v. Brumel-Alvarez*, *supra*, at page 1463.

In *United States v. Pfingst*, 477 F.2d 177 (2d Cir. 1973), the defendant requested the type of information which would be contained within such an internal government memorandum.  There, defendant asserted numerous facts which he believed suggested

that in fact a plea bargain existed between the Government's witness and the Government in exchange for the witness' testimony.  In relying upon a series of six different facts which the defendant believed supported his conclusion that such an agreement existed, the Court discussed the materiality of internal government memoranda and how such memoranda would reflect the possible bias of a cooperating individual.  Without knowing of the existence, the court emphasized that should the Government possess such internal memoranda, that they should be produced.

See also *United States v. Tashman*, 478 F.2d 129 (5th Cir. 1973), (where the failure to inform defense counsel prior to trial that an agreement had been reached between the government and the co-defendant during secret proceedings and that consummation of the Government's part of the agreement was contingent upon the value of the co-defendant's testimony against the defendant was so prejudicial that a new trial was required.); *United States v. Smith*, 480 F.2d 660 (5th Cir. 1973), (The Government's active misrepresentation of the nature of a plea bargain with a cooperating individual deprived the defendant of his right to a fair trial.)

In *Shaffer* and *Pfingst*, *supra*, the court also recognized that tax returns of cooperating individuals are relevant.  To the extent that the tax returns do not contain all income which would have been derived from possible complicity in illegal narcotics trafficking, the witness may have a tacit understanding that the Government would not proceed on forfeiture actions or possibly with respect to past criminal or civil tax liability. In *Shaffer*, it was exactly this type of information which was withheld from the defendant and which mandated a new trial.

In *United States v. Pfingst*, *supra*, the court again emphasized that pre-sentence reports in the possession of the government may reflect certain expectations of the witness with respect to anticipated leniency or in conjunction with his cooperation with the Government.

## ITEMS SEVENTEEN TRHOUGH EIGHTEEN: PHYSICAL AND DOCUMENTARY EVIDENCE

Federal Rules of Criminal Procedure 16(a)(1)(C) provides for disclosure of "books, papers, documents, photographs, tangible objects, buildings or places, or copies of portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belonged to the defendant."

Thus, access to drugs, audio recordings, cell phone records, hard drives or tangible objects material to the indictment and within the possession or control of the Government are discoverable pursuant to subdivision (C).  *United States v. Reid*, 43 F.R.D. 520 (D.Ill. 1967); *United States v. Tanner*, 279 F.Supp. 457 (D.Ill. 1967); *United States v. Wilson*, 20 F.D.R. 569 (D.N.Y. 1957); *United States v. Smith*, 16 F.R.D. 372 (W.D. Mo. 1954); *United States v. Countryside Farms, Inc.*, 428 F.Supp. 1150 (D.Ut. 1977); *United States v. Mannino*, 480 F.Supp. 1182 (S.D.N.Y. 1979).

This request particularly focuses upon access to any physical evidence seized during his arrest on January 1, 2020 by law enforcement officers, which the Government may seek to introduce at trial or at sentencing.

## ITEM NINETEEN:  EXCULPATORY EVIDENCE

The Government must disclose to the defendants all exculpatory evidence within its possession.  *Brady v. Maryland*, 373 U.S. 83 (1963).  There, the court stated:

> Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilty or to punishment irrespective of the good faith or bad faith of the prosecution.

*Brady v. Maryland*, *supra*, at page 87.

See *Calley v. Callaway*, 519 F.2d 184 (5th Cir. 1975); *Scurr v. Niccum*, 620 F.2d 186 (8th Cir. 1980).

In *United State v. Price*, 566 F.3d 900 (9th Cir. 2009), the Ninth Circuit described the standard of materiality for a trial judge to apply when determining pre-trial what constitutes *Brady* materials:

> For the benefit of trial prosecutors who must regularly decide what material to turn over, we note favorably the thoughtful analysis set forth by two district courts in this circuit:
>
> T]he 'materiality' standard usually associated with *Brady* . . . should not be applied to pretrial discovery of exculpatory materials. . . . [J]ust because a prosecutor's failure to disclose evidence does not violate a defendant's due process rights does not mean that the failure to disclose is proper. . . . [T]he absence of prejudice to the defendant does not *condone* the prosecutor's suppression of exculpatory evidence [*ex ante*]. . . . [Rather,] the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. . . . [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made. . . . [T]he government [should therefore] disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence. *United States v. Acosta*, 357 F. Supp. 2d 1228, 1239-40 (D. Nev. 2004) (emphasis added) (citing *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999)).

*United States v. Price*, *supra*, at p. 913 n. 14.

Additionally, California Rules of Professional Conduct Rule 3.8(d) states that a Prosecutor in a criminal case must "make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows or should reasonably know tends to negate the guilt of the accused, mitigate the offense, or mitigate the

sentence…" Cal. Rules of Professional Conduct, rule 3.8. Comment [3] under the rule further states that

> [t]he disclosure obligations in paragraph (d) are not limited to evidence or information that is material as defined by *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194] and its progeny. For example, these obligations include, at a minimum, the duty to disclose impeachment evidence or information that a prosecutor knows or reasonably should know casts significant doubt on the accuracy or admissibility of witness testimony on which the prosecution intends to rely…

Cal. Rules of Professional Conduct, Rule 3.8 Comment [3]

Mr. FISCHBECK is seeking any and all information in the possession of the Government, which will assist him in establishing that he is not guilty of the crimes alleged, mitigate the offense, or mitigate sentencing.

Mr. FISCHBECK respectfully request that the court order the Government to immediately disclose to the defense, all of the items enumerated above. At a minimum, Mr. FISCHBECK requests that the items described above be submitted to the court <u>in camera</u> for review. In the event that the Court determines that there is no exculpatory information contained within these items whatsoever, Mr. FISCHBECK respectfully requests that these items be sealed and made part of the record in the instant case for purposes of appellate review.

Based on the foregoing, Mr. FISCHBECK respectfully requests discovery of each and every item described above as well as a continuing order for discovery through trial. As noted previously, in the event that the court does not order production of these items of discovery, the defense is requesting that the items be sealed and made part of the record for purposes of appellate review.

Respectfully submitted,

Dated: __March 11, 2020__          *s/Patrick Q. Hall*
                                   PATRICK Q. HALL
                                   Attorney for Defendant
                                   DANIEL ANTHONY FISCHBECK